**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LUCINDA PRENTISS<br>2351 Eisenhower Avenue, #616<br>Alexandria, VA 22314<br>Plaintiff, | ) | Civil Action No. |
| v. | ) | **Jury Trial Demanded** |
| John F. Kelly, Secretary,<br>U.S. Department of Homeland Security,<br>3801 Nebraska Ave, NW<br>Washington, DC 20016<br>Defendant. | ) | |

## COMPLAINT

Plaintiff, Lucinda Prentiss, by way of her counsel, Morris E. Fischer, herein brings an action for actions taken against her by the Defendant, Secretary of the U.S. Department of Homeland Security ("Defendant" or "Agency"), in violation of the Rehabilitation Act, 42 U.S.C. § 12101, et. seq., and Title VII of the Civil Rights Act, 42 U.S.C. § 1983.

## PARTIES

1. Plaintiff, Lucinda Prentiss, is a current employee of the U.S. Department of Homeland Security.

2. Defendant is the Secretary of the Department of Homeland Security, named in his official capacity pursuant to 42 U.S.C. § 2000e-16.

3. Plaintiff's a resident of Alexandria, Virginia.

4. Defendant does business at the U.S. Department of Homeland Security, 3801 Nebraska Ave, NW, Washington, D.C. 20016.

5. Defendant is properly named as the head of the Agency pursuant to 42 U.S.C. § 2000e-16(c).

## JURISDICTION

6. This action arises under the Rehabilitation Act, 42 U.S.C. S 12101, *et seq.*, which prohibits discrimination against employees based upon race, sex, reprisal, and disabilty.

7. Defendant does business at the Department of Homeland Security, 3801 Nebraska Ave, NW, Washington, D.C. 20016.

8. All of the necessary administrative prerequisites have been met prior to filing the instant action, as has filed timely complaints of discrimination and retaliation with her federal employer, the Department of Homeland Security, and brings her action within 90 days of receiving the Agency's Final Decision ruling that was not discriminated against. , decided on March 7, 2017 and received by the Plaintiff on March 12, 2017.

9. At all times relevant to this case, Defendant has been an "employer" as defined by 42 U.S.C. §2000e(b).

10. The District of Columbia is where the actions complained of in the present case took place, where the employment records relevant to the unlawful practices are kept by the Defendant.

11. Therefore, this court has jurisdiction over these claims under 42 U.S.C. §§ 2000e-5 & -16 (2012).

12. Defendant resides in this judicial district, and a substantial part of the events giving rise to this action took place within this judicial jurisdiction.

13. Therefore, this court has proper venue pursuant to 29 U.S.C. § 1391 (2012).

## **FACTS**

14. Lucinda Prentiss is an African-American Female.

15. On January 26, 2015, Mr. Amatisto aggressively approached the Plaintiff, came within one foot of her, then yelled in anger about a work matter.

16. On January 29, 2015, Mr. Amatisto raised his voice in anger toward Plaintiff.

17. During a meeting on February 4, 2015, Mr. Amatisto became agitated and the Director of Financial Management Division ("Mr. Whalen") had to intervene after a considerable and repeated effort and ordered Mr. Amatisto to leave.

18. On April 2, 2015, in another meeting with the Director of Financial Management and Mr. Amatisto, Mr. Amatisto pointed at  in an aggressive manner and stormed out of the meeting as the Mr. Whalen failed to control his behavior.

19. On April 3, 2015, Plaintiff reminded Mr. Whalen that she had notified him of Mr. Amatisto's behavior.

20. On April 6, 2015, Plaintiff informed Mr. Whalen that she felt threated and uncomfortable working with Mr. Amatisto.

21. On April 7, 2015, at a staff meeting Mr. Amatisto sat directly across from the Plaintiff and while the Financial Resource Analyst was talking Mr. Amatisto interrupted to ask the Plaintiff unrelated questions.

22. When the Plaintiff wanted to report the April 2, 2015 incident to the EEOC it took Mr. Whalen eight days to inform the Plaintiff of the EEOC contact person's name even though he already knew the name before April 2015.

23. On May 12, 2015, Mr. Amatisto excluded the Plaintiff from the discussion and conversation in Mr. Whalen's presence by not providing her a copy of Mr. Amatisto's report,

thereby affecting the terms and conditions of Plaintiff's employment. Mr. Whalen did nothing to correct this behavior.

24. On June 1, 2015, Mr. Whalen informed  that he did not have personnel files or administrative files for Plaintiff's staffs' 2015 performance work plans which "directly and detrimentally" deprived her of the building blocks to being successful in supervising her staff and measuring their performance.

25. On July 14, 2015 Mr. Whalen undermined Plaintiff's supervisory authority and singled her out when he demeaned and humiliated her with regard to Ms. Baden and Mr. Amatisto.

26. On August 5, 2015 Mr. Whalen undermined the Plaintiff's supervisory authority and singled her out when he demeaned and humiliated her, via email, to the Deputy Director Resource Management, Ms. Baden, and a co-worker, Paula Stone ("Ms. Stone"), and a subordinate who was the Financial Program Cost Analyst.

27. From May 31 to August 5, 2015, Mr. Whalen used humiliating and demeaning language through email, directly assigned Plaintiff work, directly assigned her staff work, and undermined her supervisory authority even though he was not in Plaintiff's direct supervisory chain or in her division.

28. During this time, Ms. Baden treated the Plaintiff differently from other staff who had not filed EEO claims.

29. From June to September 25, 2015, a different Director of the Finance Management Division, ("Ms. Baden") consistently and regularly treated Plaintiff's similarly-situated co-worker, Ms. Stone, "vastly more favorably" than Plaintiff in daily actions and interactions.

30. From June to September 25, 2015, Ms. Baden regularly and consistently included and sought input from Ms. Stone in the Financial Management Division (FMD) reorganization plans which included Plaintiff's branch.

31. Ms. Baden indicated in the plan that Plaintiff's position series classification was being changed from a 560 series Budget Analyst (BA) positon to a 501-series position without any input from Plaintiff who was a Supervisory Budget Analyst (SBA).

32. At the same time, Ms. Baden hired a 560 non-supervisory BA pursuant to the reorganization who was not designated to be supervised by the only 560 supervisor – Plaintiff – in the FMD as Ms. Baden was a 501-series supervisor.

33. Plaintiff did not have an opportunity to provide input into the reorganization plan although she and Ms. Stone were the only FMD employees who had Ms. Baden as their first-level supervisor.

34. In September 2015, Ms. Baden invited Ms. Stone to attend a job fair with her and later reviewed resumes with Ms. Stone related to potential positions within the FMD and/or the Federal Protective Services (FPS).

35. Ms. Stone was not a supervisor and did not have supervisory authority to select and/or hire anyone unless Ms. Baden intended to pre-select Ms. Stone for a supervisory position within the FMD and allowed Ms. Stone to review resumes prior to her selection.

36. Plaintiff, who was a supervisor who had the ability to select and/or hire employees as authorized in Plaintiff's position description ("PD"), was not offered the career-enhancing and/or developmental opportunity.

37. On August 21, 2015, Plaintiff learned through an email that Ms. Spore was resigning on Ms. Spore's last day of work.

38. On August 24, 2015, Plaintiff asked Ms. Baden why she had not informed Plaintiff of Ms. Spore’s resignation, Ms. Baden responded that she thought Plaintiff knew about Ms. Spore’s resignation.

39. Through this conversation, Plaintiff learned that Ms. Baden failed to include Plaintiff in Ms. Baden’s discussions with Ms. Stone regarding the resignation of Ms. Spore, when the agency knew that this employee was a named witness in Plaintiff’s Anti-Harassment and EEO complaints.

40. Ms. Baden admitted that she had discussed the employee's resignation with Ms. Stone, who was also a named witness in Plaintiff’s EEO complaints, on several occasions prior to August 21, 2015.

41. Ms. Baden further humiliated Plaintiff on August 24, 2015, by verbally relaying this conversation to a contractor who supports Plaintiff.

42. Ms. Spore’s resignation directly impacted and greatly increased Plaintiff’s workload, making Plaintiff the primary first-level approver in the Financial System; therefore, Plaintiff had a need to know about the resignation.

43. Ms. Baden became Plaintiff's supervisor on June 2015. Since that date, Ms. Baden had scheduled only one meeting with Plaintiff but continued to meet with Ms. Stone both formally and informally daily as well as during numerous times throughout each work day when both Ms. Stone and Ms. Baden were in the office.

44. Plaintiff was not offered any opportunities for any individual formal or informal daily career enhancing and/or developmental coaching, mentoring, or guidance by Ms. Baden.

45. On August 2, 2015, Ms. Baden appointed Ms. Stone the Acting Division Director during Ms. Baden's absence.

46. Plaintiff brought to Ms. Baden's attention that Ms. Stone was not a GS-14 supervisor and that Plaintiff was a GS-14 supervisor and, therefore, was a logical choice to have frequent opportunities to receive career-enhancing development and experience as a supervisor acting in a GS-15 capacity.

47. On September 24, 2015, Ms. Baden did not include Plaintiff in a Spend Plan Briefing with the Director of FPS, although Plaintiff formulated and produced the annual budget that the Spend Plan was based on and had direct knowledge of the Spend Plan, but included Ms. Stone who was not a BA and whose experience was in financial management (501 series).

48. Ms. Baden, also a 501-series employee, in the past, frequently asked Ms. Stone to attend and answer the DDRM's and the Director's budget-related questions when she, herself, had difficulty comprehending and answering budget formulation related questions.

49. Ms. Baden had previously informed Plaintiff and others, including Mr. Whalen, Ms. Stone, and several contractors that Plaintiff would be attending the executive Spend Plan briefings, and Ms. Baden had never stated that Plaintiff was uninvited.

50. After June 1, 2015, Ms. Baden failed to support Plaintiff when Plaintiff had to discipline two of her subordinates due to their leave abuse, specifically, the discipline involving the FPCA.

51. During this time period, Ms. Baden frequently provided Plaintiff incorrect guidance regarding acceptable medical documentation, requested that Plaintiff postpone/cancel/change decisions or meetings with the FPCA, instructed Plaintiff to do something contrary to the Employee and Labor Relations Office's (E&LR) advice, and frequently ignored the FPCA's performance, leave abuse, and conduct issues to undermine Plaintiff's supervisory authority.

52. On August 26, 2015, Ms. Baden emailed Plaintiff at 5:20 a.m., charging leave to Plaintiff when she reported 45 minutes late for work on August 17, 2015, even though Plaintiff had previously worked an abundance of extra hours, with Ms. Baden's knowledge, and had not been compensated for those extra hours.

53. Plaintiff believed that Ms. Baden was taking this action because Plaintiff complained to the DDRM, Ms. Baden’s first level supervisor that Ms. Baden was not helping the Plaintiff handle the ongoing leave abuse issues with Plaintiff's subordinates on August 24 and 25, 2015.

54. Further Plaintiff informed Ms. Baden that on August 24, 2015, the FPCA, Plaintiff’s subordinate, was manipulating Ms. Baden into interfering with the discipline the FPCA had received relative to her leave abuse. Ms. Baden previously had not charged Plaintiff leave prior to the conversation and emails about the FPCA.

55. On August 26, 2015, Ms. Baden required Plaintiff to provide her with a copy of Plaintiff's work schedule, almost 90 days after Ms. Baden had already been supervising Plaintiff without scheduling incidents.

56. Plaintiff simultaneously submitted an Alternative Work Schedule (AWS) request form along with the work schedule. To date, Ms. Baden has not acted upon Plaintiff’s AWS request.

57. Additionally, whether NPPD discriminated and subjected Plaintiff to a hostile work environment based age (YOB: 1970), disability (physical), and reprisal (prior EEO activity) 3 when:

58. On August 26, 2015, Ms. Baden failed to provide Plaintiff with a reasonable accommodation (RA) when Ms. Baden instructed Plaintiff to keep her office door wide open during business hours despite knowing that Plaintiff had informed and complained to Ms. Baden, the DDRM, and Mr. Whalen that Plaintiff's office was too cold for Plaintiff and that the DDRM

informed Ms. Baden and Plaintiff that Plaintiff could close the door and place a note on it stating that Plaintiff was open for business.

59. Plaintiff also informed Ms. Baden that she closes the door when dealing with her subordinates' personnel issues and when working with E&LR and legal counsel which was quite often due to Plaintiff’s subordinates' leave and performance issues.

60. On September 25, 2015, Plaintiff sent Ms. Baden an email requesting to work from home due to Plaintiff's child staying home from school with a cold.

61. Ms. Baden instructed Plaintiff to take a day of leave, when Plaintiff did not request to take leave, summarily ignoring Plaintiff's request to telework.

62. On July 30, 2015, Plaintiff submitted a Telework Agreement to Ms. Baden.

63. To date, Ms. Baden has not responded to Plaintiff's request even when DHS policy required supervisors to respond to the request within 20 days.

64. Ms. Baden has consistently marginalized Plaintiff and showed favoritism toward Ms. Stone.

65. Ms. Baden did not hold Ms. Stone to the same level of scrutiny or the same high standards when it involved teleworking, working outside of normal business hours, regular work hours, WebTA, requests for leave, or other work-related matters.

66. Ms. Baden sought Ms. Stone’s opinion on both Plaintiff’s Branch and Plaintiff’s staff despite Ms. Stone not being supervisor.

67. On September 24, 2015, both Plaintiff and Plaintiff's subordinates were teleworking, processing obligations in the financial system in preparation for year-end close.

68. The evening of September 24, 2015, Plaintiff sent Ms. Baden an email that she was working from home and would notify Ms. Baden later of the total hours worked.

69. On September 25, 2015, Ms. Baden responded stating that overtime and compensatory hours needed to be requested in advance and to let Ms. Baden know what Plaintiff was working on that required hours above the normal day, and that Ms. Baden would consider the request.

70. Ms. Stone frequently worked from home processing documents in the financial system and did not supervise any staff, yet, Ms. Baden requested that Plaintiff justify her work.

71. Ms. Baden retaliated against Plaintiff for filing EEO and Anti-Harassment complaints against the agency and the former Director of FMD (Mr. Whalen), and for filing an EEO complaint against Ms. Baden.

72. Ms. Baden was aware that Plaintiff filed an EEO complaint against the agency and Mr. Whalen, as early as June 2015, and was notified by Plaintiff on August 5, 2015.

73. Ms. Baden stated to Plaintiff that she was currently involved in an EEO case and never wanted to be a part of another EEO case and would do anything it took not to be a part of an EEO case again. Ms. Baden's discriminatory behavior has made Plaintiff's working conditions so unbearable that she would feel forced to leave.

74. Whether NPPD discriminated against Plaintiff and subjected her to a hostile work environment based on race (African American), sex (female), age (YOB: 1970), parental status (single parent), and reprisal, when:

75. Ms. Baden failed to issue Plaintiff a fiscal year 2015 (FY15) PWP, which is required by agency policy to be issued, for her SBA position.

76. Ms. Baden “greatly marginalized” Plaintiff’s duties and responsibilities as described in her PD for the GS-560-14 BA position and in the vacancy announcement for the position she applied for and was hired into.

77. Ms. Baden hired the BA, a younger (under age 40) Caucasian female, whom Plaintiff did not supervise.

78. Ms. Baden listed Plaintiff's current position as a 501 series.

79. Ms. Baden issued Plaintiff a letter of counseling (LOC) related to her RA request to keep her door mostly closed due to coldness in her office.

80. Mr. Whalen retaliated against Plaintiff by way of exposing her to a hostile work environment when:

81. Mr. Whalen failed to issue Plaintiff an FY15 PWP, which is required by agency policy, for her SBA position.

82. Mr. Whalen "greatly marginalized" Plaintiff's duties and responsibilities as described in her PD for the GS-560-14 BA position and in the vacancy announcement for the position she applied for and was hired into.

83. Mr. Whalen changed and/or reduced the title of Plaintiff's position from Chief, Budget Support Services, as listed on her PD, to Chief of the HQ Program Support Services. Further, this action resulted in Plaintiff having no substantive budget-related duties or responsibilities, although both positions are 560 series.

84. On March 31, 2016, Plaintiff claimed that Ms. Baden issued an email to Plaintiff entitled, "Failure to Satisfactorily Complete Probationary Period for Supervisory Position" (Notice). Additionally, Ms. Baden stated the following within that memorandum:

a. Plaintiff has not been effective managing and resolving personnel issues within her branch.

b. Plaintiff had been unreasonably harsh in dealing with leave and attendance issues involving her subordinate employees.

c. Plaintiff disregarded Ms. Baden's instruction to inform Plaintiff's staff that they could telework during the snow emergency on January 22, 2016, and required the FPCA to report to the office for work that day.

d. Plaintiff declined to provide appropriate guidance to her staff regarding her expectations with respect to attendance and leave issues.

e. After placing the FPCA on absence without leave (AWOL) status for leave taken December 23, 2015, Plaintiff refused to respond to the FPCA's request for an explanation for that action.

f. Plaintiff failed to work cooperatively with representatives from the E&LR to address personnel issues within her branch. As a result, in August 2015, representatives from the E&LR contacted Plaintiff to raise concerns regarding personnel issues involving her staff.

g. Plaintiff displayed an inappropriate and unprofessional tone and approach in her emails and communications. On numerous occasions, Plaintiff challenged Ms. Baden's guidance and directives through email, and the tone of her communications was often aggressive and accusatory.

h. On February 1, 2016, Ms. Baden sent Plaintiff numerous emails questioning the need for her to perform a task assigned to her, and also accusing Plaintiff of resisting Ms. Baden's instruction to meet with her to discuss workload priority.

85. Ms. Baden listed numerous issues that have nothing to do with Plaintiff's supervisory performance:

a. Ms. Baden failed to provide Plaintiff with her duties within her PD, Ms. Baden issued Plaintiff an incorrect FY15 PWP Appraisal.

b. Ms. Baden provided Plaintiff an incorrect FY16 PWP, and requested a desk audit of Plaintiff's position.

c. Ms. Baden never issued a final decision on Plaintiff's February 8, 2016 RA request.

## COUNT I
## DISCRIMINATION BASED UPON RACE IN VIOLATION OF TITLE VII

86. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

87. Plaintiff's race is African-American.

88. Plaintiff met the expectations of Defendant's job requirements.

89. The aforesaid discriminatory treatment by Defendant toward Plaintiff caused tangible harm to Plaintiff in that it affected the terms, conditions, and privileges of her employment.

90. Other similarly situated employees not of Plaintiff's race were not subject to the same conditions of employment as Plaintiff.

91. A causal connection exists between Defendant's discriminatory actions and Plaintiff's race.

92. Mr. Amatisto's action towards Plaintiff by aggressively approaching her and yelling at her, continuingly raising his voice in anger towards Plaintiff, told her that her body language was offensive, and loudly "ranted" and "squared off" against her.

93. Plaintiff's race was the motivating factor in its actions towards Plaintiff.

94. Plaintiff's race was a motivating factor in its action towards Plaintiff.

95. Defendant's actions constituted a violation of 42 U.S.C. § 2000(e) et. seq.

96. Defendant's conduct was malicious, willful, and intentional.

97. Plaintiff has suffered substantial economic and compensatory damages as a result of Defendants' actions.

98. Plaintiff has also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, depression, insomnia, and other damages as a direct result of Defendant's acts and omissions.

## COUNT II
## DISCRIMINATION BASED UPON GENDER IN VIOLATION OF TITLE VII

99. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

100. Plaintiff's gender is Female.

101. The aforesaid discriminatory treatment by Defendant toward the Plaintiff caused tangible harm to Plaintiff in that they affected the terms, conditions, and privileges of her employment.

102. Plaintiff met the expectations of Defendant's job requirements.

103. Other similarly situated employees not of Plaintiff's gender were not subject to the same conditions of employment as Plaintiff.

104. A causal connection exists between Defendant's discriminatory actions and Plaintiff's gender.

105. Plaintiff's gender was the motivating factor in its actions towards Plaintiff.

106. Plaintiff's gender was a motivating factor in its actions towards Plaintiff.

107. Defendant's actions constituted a violation of 42 U.S.C. § 2000(e) et seq.

108. Defendant's conduct was malicious, willful, and intentional.

109. Plaintiff has suffered substantial economic and compensatory damages as a result of Defendant's actions.

110. Plaintiff has also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, depression, insomnia, and other damages as a direct result of Defendant's acts and omissions.

## COUNT III
## DISCRIMINATION - AGE IN VIOLATION OF THE ADEA AND TITLE VII

111. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

112. Plaintiff was discriminated against by Defendant with regards to her age, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et. seq., by hiring a younger (under age 40) Caucasian female, whom the Plaintiff did not supervise, listed the Plaintiff's current position as a 560 series, issued the Plaintiff a letter of counseling ("LOC") related to her reasonable accommodation ("RA") to keep her door mostly closed due to coldness in her office.

113. The aforesaid discriminatory treatment by Defendant toward Plaintiff caused tangible harm to the Plaintiff in that they affected the terms, conditions and privileges of her employment.

114. Other similarly situated employees not of Plaintiff's age group were not subject to the same conditions of employment as Plaintiff.

115. The Agency, through its employees, acted wantonly, willfully, with malice, and with reckless indifference to Plaintiff's civil rights.

116. A causal connection exists between Defendant's aforementioned actions and Plaintiff's age.

117. Defendant's action caused Plaintiff monetary damages.

118. In addition to the above, Plaintiff suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, illnesses related to stress, and other damages.

**COUNT IV**
**DISCRIMINATION DUE TO FAILURE TO ACCOMMODATE**

119. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

120. Plaintiff fell ill due to the temperature in her office.

121. Defendant was aware of Plaintiff's disability.

122. Plaintiff asked if she could close her door.

123. Defendant was told to leave her door wide open.

124. Defendant's actions constituted a violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111, *et. seq.* 704 of the Rehabilitation Act of 1973.

125. The aforesaid discriminatory treatment by Defendant toward Plaintiff caused tangible harm to Plaintiff in that they affected the terms, conditions and privileges of her employment.

126. In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other damages.

**COUNT V**
**RETALIATION FOR REQUESTING ACCOMMODATION**

127. Plaintiff re-alleges and reincorporates all prior allegations as if fully stated herein.

128. Plaintiff engaged in protected EEO activity by: (a) Requesting Accommodation to close her office door.

129. Defendant, through its Agents, Servants and Employees, retaliated against Plaintiff because of the aforementioned protected EEO activity.

130. Defendant, through its Agents, Servants and Employees, retaliated against Plaintiff because of the aforementioned protected EEO activity by: (a) on September 25, 2015, ignored Plaintiff's request to telework and counting the teleworking as taking leave, (b) on September 24, 2015, defendant told Plaintiff that overtime and compensatory hours needed to be requested in

advance and to let Ms. Baden know what the Plaintiff was working on that required hours above the normal day, whereas Ms. Stone teleworked as well, yet she was not scrutinized.

131. The Agency, through its employees, acted wantonly, willfully, with malice, and with reckless indifference to Plaintiff's civil rights.

132. The Agency unlawfully retaliated against Plaintiff and her rights under the Rehabilitation Act.

133. Because of this unlawful conduct, Plaintiff suffered monetary damages, mental anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other personal damages.

## COUNT VI
## RETALIATION FOR PROTECTED PLAINTIFF'S APRIL EEO ACTIVITY

134. Plaintiff re-alleges and reincorporates all prior allegations as if fully stated herein.

135. Plaintiff engaged in protected EEO activity by: (a) wanting to report the April 2, 2015 incident to the NPPD's EEO branch, and (b) initiating contact with an EEO Counselor on April 14, 2015.

136. Defendant, through its Agents, Servants and Employees, retaliated against Plaintiff because of the aforementioned protected EEO activity.

137. Defendant, through its Agents, Servants and Employees, retaliated against Plaintiff because of the aforementioned protected EEO activity by: (a) delaying the response to inform the Plaintiff who the appropriate EEO contact was, (b) on May 12, 2015, Mr. Amatisto excluded the Plaintiff from the discussion and conversation in Mr. Whalen's presence by not providing her a copy of Mr. Amatisto's report, thereby affecting the terms and conditions of Plaintiff's employment, (c) Mr. Whalen did nothing to correct this behavior, (d) on June 1, 2015, Mr.

Whalen-1 informed the Plaintiff that he did not have personnel files or administrative files for Plaintiff's staffs' 2015 performance work plans which "directly and detrimentally" deprived her of the building blocks to being successful in supervising her staff and measuring their performance.

138. The Agency, through its employees, acted wantonly, willfully, with malice, and with reckless indifference to Plaintiff's civil rights.

139. The Agency violated Ms. Prentiss' rights under the Rehabilitation Act.

140. The Agency unlawfully retaliated against Ms. Prentiss and her rights under the Rehabilitation Act.

141. Because of this unlawful conduct, the Plaintiff suffered monetary damages, mental anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other personal damages.

**COUNT VII**
**RETALATION RETALIATION FOR PLAINTIFF'S JUNE EEOC COMPLAINT**

142. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein

143. Plaintiff engaged in protected EEO activity when, on May 20, 2015, the Plaintiff filed a formal complaint with the EEOC.

144. Defendant, through its Agents, Servants and Employees, retaliated against Plaintiff because of the aforementioned protected EEO activity.

145. Defendant, through its Agents, Servants and Employees, retaliated against Plaintiff because of the aforementioned protected EEO activity by: (a) from June to September 25, 2015, Plaintiff's direct supervisor, a different Director of the Finance Management Division, ("Ms. Baden") consistently and regularly treated Plaintiff's similarly-situated co-worker, Ms. Stone,

"vastly more favorably" than Plaintiff in daily actions and interactions, (b) from June to November 25, 2015, Ms. Baden regularly and consistently included and sought input from Ms. Stone in the Financial Management Division (FMD) reorganization plans which included Plaintiff's branch, (c) Ms. Baden indicated in the plan that Plaintiff's position series classification was being changed from a 560 Budget Analyst (BA) positon to a 501-series position without any input from Plaintiff who was a Supervisory Budget Analyst (SBA), (d) at the same time, Ms. Baden hired a 560 non-supervisory BA pursuant to the reorganization who was not designated to be supervised by the only 560 supervisor – Plaintiff – in the FMD as Ms. Baden was a 501-series supervisor, (e) Plaintiff did not have an opportunity to provide input into the reorganization plan although she and Ms. Stone were the only FMD employees who had Ms. Baden as their first-level supervisor, (d) in September 2015, Ms. Baden invited Ms. Stone to attend a job fair with her and later reviewed resumes with Ms. Stone related to potential positions within the FMD and/or the Federal Protective Services (FPS).

146. The Agency, through its employees, acted wantonly, willfully, with malice, and with reckless indifference to Plaintiff's civil rights.

147. The Agency unlawfully retaliated against Plaintiff and her rights under the Rehabilitation Act and Title VII of the Civil Rights Act.

148. Because of this unlawful conduct, Plaintiff suffered monetary damages, mental anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other personal damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seeks the following relief:

A. Award all earnings and other job benefits she would have received but for Defendant's discriminatory and retaliatory treatment, including, but not limited to, lost wages, bonuses, and other benefits of employment;

B. Remove all negative reviews, restrictions, and papers from Plaintiff's personnel file.

C. Award compensatory damages in an amount to be shown at trial, including past and future economic and non-economic losses, and compensation for the extreme emotional distress and mental anguish, impairment of quality of life, and consequential losses she has suffered;

D. Award pre-judgment and post-judgment interest;

E. Award his attorney's fees and costs of suit; and

F. Grant such other relief as the Court deems just and proper.

## REQUEST FOR A JURY TRIAL

Plaintiff herein requests a trial by jury on all matters properly tried to a jury.

Respectfully Submitted,

Morris E. Fischer
Morris E. Fischer, LLC
DC Bar No. 490369
1400 Spring Street, Suite 350
Silver Spring, MD 20910
301-328-7631 Office
301-328-7638 Fax
Attorney for Plaintiff

Date: June 5, 2017